Argued March 28, affirmed April 18, 1956

## HINDMAN *v.* COY
295 P. 2d 1097

*Earl A. Fewless* argued the cause for appellant. On
the brief were Yunker, Fewless & Hannam, Portland.

*Herbert M. Schwab* argued the cause for respondent. On the brief were Dusenberry, Teiser, Martin & Schwab, Portland.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

PER CURIAM.

This is an action for damages for personal injuries alleged to have been caused by the negligent operation of a motor vehicle, brought by Jack W. Hindman, as plaintiff, against Elsie May Coy, as defendant. The jury returned a verdict for defendant, and judgment was entered accordingly. Plaintiff appeals.

Southeast Sandy boulevard is an arterial highway extending in a general northeasterly and southwesterly direction in the city of Portland, Multnomah county, Oregon, and is intersected at approximately the same place by S. E. 11th avenue, which runs in a northerly and southerly direction, and S. E. Ankeny street, which runs in an easterly and westerly direction. Southeast Sandy boulevard is 60 feet in width with four lanes for travel, two each way, and with a parking lane on each side. Southeast 11th avenue and S. E. Ankeny street are each 33 feet in width. Southeast 12th avenue runs parallel with S. E. 11th avenue and is one block east of 11th avenue; East Burnside street runs parallel with S. E. Ankeny and is one block north of Ankeny. Southeast Sandy boulevard crosses East Burnside and S. E. 12th avenue at about the same place and proceeds northeasterly, thereafter being designated as N. E. Sandy boulevard. Traffic at the intersection of S. E. Sandy boulevard and East Burnside street is controlled by electric traffic lights.

The accident involved in this case occurred at the common intersection of S. E. Sandy, S. E. 11th, and S. E. Ankeny. Immediately prior to and at the time of the accident, plaintiff was riding in the back seat of an automobile owned and being operated by one Harry C. Silvis. The Silvis car was proceeding in a northeasterly direction along S. E. Sandy and in the outside lane of traffic thereof (the lane immediately west of the parking lane). The defendant was operating her car in a westerly direction on S. E. Ankeny. The time was approximately 1:30 o'clock in the morning of December 30, 1952.

At a point approximately 15 feet west of the east curb line (extended) of S. E. Sandy and 30 feet north of the southeast corner of the intersection of S. E. Sandy and S. E. Ankeny, a collision occurred between the two automobiles, the left front of the Silvis car striking the left rear of the Coy vehicle. Just before the impact, Silvis had swung his car sharply to the right so that the impact between the two vehicles was more in the nature of a sideswipe than a head-on collision. Silvis drove his car a short distance on S. E. Ankeny and parked it along the south curb of that street. Mrs. Coy drove her car across S. E. Sandy after the impact and continued on down S. E. Ankeny, and, according to Silvis and Hindman, without stopping, although Mrs. Coy stated that she stopped briefly not only immediately following the impact, but also after she had crossed S. E. Sandy. For a better understanding of the situation existing at the intersection in question, we have attached to this opinion a reproduction of the substantial part of a drawing admitted in evidence.

Plaintiff charged defendant with negligence in (1) failing to keep a proper lookout; (2) failing to main-

tain proper control; (3) operating her vehicle at a speed greater than was reasonable and prudent under the conditions existing at the time; (4) failing to stop, turn, swerve or otherwise maneuver her vehicle to avoid the collision; and (5) failing to bring her automobile to a stop prior to entering S. E. Sandy boulevard.

Defendant testified that she stopped her car at the stop sign on S. E. Ankeny just before entering S. E. Sandy and looked both to her right and left; she waited for a car coming from her left on S. E. Sandy to pass before proceeding; she saw no other traffic immediately approaching the intersection (she did not see the Silvis car) and drove into the intersection, driving in low gear. Shortly after entering the intersection, she felt a bump (point of impact marked "x 10" on map), but did not see what caused it nor what, if anything, happened to her car, although she later heard the scraping sound of the left rear fender rubbing on the tire.

Silvis testified that he first saw defendant's car when it was approximately 75 feet east of the point of impact (marked "x 9" on the map); that his car was then in the vicinity of the electric arc light at the southeast corner of the intersection of S. E. Sandy and S. E. Ankeny, or approximately 40 feet from the point of impact (marked "x 8" on map); he said he was traveling at the rate of 20 to 25 miles per hour and was watching ahead for the traffic light at the intersection of S. E. Sandy and East Burnside; he told the investigating officer immediately following the accident that Mrs. Coy was traveling at a rate of speed of 30 to 35 miles per hour and did not stop before entering the intersection; upon the trial, however, he testi-

fied that she was traveling at the rate of 20 to 25 miles per hour and did not stop.

Hindman testified that he first saw the approaching Coy car when the Silvis vehicle was a short distance south of the point where S. E. 11th commences to intersect S. E. Sandy, or approximately 130 feet from the point of impact (marked "10 x" on map); he said

that the Coy car at the time was approximately 65 feet from the point of impact (marked "x 11" on map), and that it did not stop before entering S. E. Sandy.

Plaintiff's first assignment of error on this appeal is that the trial court erred in refusing to direct a verdict in favor of plaintiff, leaving to the jury only the question of the amount of damages to be allowed. The trial court did not err in this respect. The evidence clearly presented a jury question as to liability. There were conflicts in the testimony. The jury was required to settle those conflicts. It was the sole judge of the credibility of the witnesses and of the weight of the evidence. It was not required to believe the testimony of Silvis and the plaintiff or of any other witness. It may have found, as it was justified in finding, that both Silvis and Hindman were misstating the true facts of the case. For example, according to Silvis, after he first saw defendant's car, he had approximately 40 feet to travel to the point of impact, while defendant's car had to travel approximately 75 feet. Of course, that would be a physical impossibility with both cars traveling at the same rate of speed. According to plaintiff's testimony, the situation was even worse, because while the Coy car was going 65 feet to the point of impact, the Silvis car, of necessity, would have to travel 130 feet.

Moreover, there was testimony as to prior inconsistent statements made by both Silvis and Hindman as to material facts. On the trial Silvis testified that defendant continued her travel west on S. E. Ankeny, whereas on a former occasion he had testified that she turned off S. E. Ankeny. He testified on the trial that he saw the defendant's car while still some distance from the point of impact, whereas on a former occasion he had testified that he did not see her car until after the collision. On a former occasion the plaintiff Hind-

man had also testified that he did not see the Coy car until after the impact. Plaintiff and Silvis denied making such inconsistent statements, but whether they did or not was for the jury to determine.

■ We cannot know what influenced the jury in returning its verdict. To account for the impact, it may have believed that Silvis had his mind entirely on the traffic signal at East Burnside, and that he was speeding to catch the green light at that point, and that he did not see the Coy car until just before the impact; it may have believed that when defendant, after stopping at the stop sign before entering S. E. Sandy and permitting a car going northeasterly to pass and seeing no other car immediately approaching from her left, entered the intersection as she had the right to do, then gave her attention to the right from which traffic traveling southwesterly might well be expected. It may have believed that when she entered the intersection, the Silvis car was somewhere in the shadows cast by the arc light south of S. E. Ankeny and could not be seen, or, if it could be seen, was so far away as not to constitute an immediate hazard if complying with the law. In any event, a jury question was presented as to whether or not defendant was negligent in any respect as charged against her in the complaint, and the burden of proof was upon plaintiff to establish such negligence as a proximate cause of the accident. From the verdict of the jury, it is evident that plaintiff failed to meet the burden of proof imposed upon him.

In *Shobert v. May*, 40 Or 68, 73, 66 P 466, 55 LRA 810, we said:

"* * *. * * * in cases where the negligence of the defendant is to be determined, notwithstanding there may be no conflict in the testimony, that party, in our judgment, is entitled, under the organic law

of the state (Const. Art. I, § 17), to the verdict of a jury, unless waived, to the effect that he has not exercised that degree of care that the law exacts under all the circumstances of the case, before he can be compelled to respond in damages.''

Plaintiff makes the following assignment of error:

''That the court erred during the course of the trial in making numerous grave and prejudicial errors in that the conduct of the court was such as to prevent the plaintiff from having a fair and impartial hearing.''

We have carefully examined the record and from it find that the above charge is wholly without merit. Contrary to the claim made by plaintiff, we find that the able and conscientious trial judge was most meticulous in the conduct of the trial so as to assure both parties a fair hearing. During the course of the trial there was considerable feuding between respective counsel of a nature improper in a court of justice. Despite extreme provocation at times, the trial judge, nevertheless, said nothing whatever in the presence of the jury that might tend or was designed to prejudice them against either the plaintiff or defendant. If any prejudice against plaintiff's cause arose during the course of the trial, it is more likely that it was attributable to the conduct of plaintiff's counsel and to the questionable testimony of plaintiff and Silvis, rather than to any words or actions on the part of the judge. On more than one occasion plaintiff's counsel disregarded the rulings of the court and attempted to get improper evidence into the record. At times these attempts bordered upon contempt of court. Yet, despite the tactics employed by counsel, the trial judge exhibited the patience of Job. He did not reprimand counsel in the presence of the jury, although a repri-

mand would have been in order. In our opinion, the charge made by plaintiff in this assignment of error is not only without merit, but also is very unjust.

The other assignments of error have to do with objections sustained or overruled as to questions propounded to witnesses. We have read the record in connection with all of them. It will serve no good purpose to discuss them in detail. We find no prejudicial or reversible error in any of the trial court's rulings.

The judgment is affirmed.